UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IJOMA RAYMOND,
    Petitioner,                                      Case No. 09-13648
                                                       Honorable Patrick J. Duggan

v.

MILLICENT WARREN,
    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

On September 15, 2009, Ijoma Raymond ("Petitioner"), a state prisoner currently incarcerated at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges her conviction for possession with intent to deliver 650 or more grams of heroin, in violation of Michigan Compiled Laws § 333.7401(2)(a)(i). For the reasons stated below, the Court denies the petition.

### I. Factual and Procedural Background

Petitioner was convicted of the above offense following a jury trial in Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

> On July 27, 2001, the Oakland County Macomb Interdiction Team ("OMIT"), a multi-jurisdictional FBI drug unit, conducted surveillance of defendant and codefendant Peter Emeka Nwankwo, after receiving information that the two may be involved drug trafficking. During their surveillance, OMIT officers observed that codefendant Nwankwo was pulled over by a Southfield police

> officer for erratic driving. The vehicle was registered to defendant. Codefendant Nwankwo was arrested for failure to produce a valid driver's license. A subsequent search of the vehicle uncovered a package of heroin.
>
> Sergeant Terrence Mekoski, the OMIT leader, testified that the OMIT team went to defendant's motel room because they knew the car containing the heroin was registered in her name and that the two defendants were traveling together. After identifying themselves as police officers, Sergeant Mekoski stated that defendant opened the door and gave them permission to enter. At that point, Sergeant Mekoski claimed that he explained to defendant that codefendant Nwankwo had been arrested and that heroin was discovered in the car.
>
> Sergeant Mekoski testified that defendant granted them oral and written permission to search her motel room for narcotics, drug paraphernalia, and drug proceeds. During the search, Detective David McNealy, III opened two children's stuffed animals and uncovered several packets containing a substance suspected to be heroin. Sergeant Mekoski also discovered a plastic "baby powder container" containing heroin. Nearly $2,500 was recovered from underneath the lining of defendant's purse. Defendant was placed under arrest.
>
> Defendant waived her *Miranda* rights and informed Sergeant Mekoski that she, codefendant Nwankwo, and two other people, "met up" in a Chicago motel room. Defendant explained that she and codefendant Nwankwo were given a kilogram of heroin to transport to Michigan to sell. Sergeant Mekoski testified that defendant initially indicated that codefendant Nwankwo was responsible for selling the heroin and collecting the money, while she would simply wait in the motel room for him to return to drop off the proceeds and collect more heroin. She maintained that the two other Chicago parties owned the heroin. According to Sergeant Mekoski, defendant later admitted that she was the actual connection to the heroin. She stated that she accepted codefendant Nwankwo''s offer to sell the heroin on the street because she needed money for medical bills.
>
> Codefendant Nwankwo was called by the prosecution and testified in defendant's case. He denied that he was involved in selling heroin, but admitted that he planned to introduce defendant to a person to whom she could sell her heroin.

*People v. Raymond,* No. 241601, 2004 WL 94099, at *1 (Mich. Ct. App. Jan. 20, 2004)

(per curiam) (footnote and citation omitted).

2

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 470 Mich. 887, 682 N.W.2d 94 (Mich. 2004). Petitioner then filed an application for writ of habeas corpus, which this Court dismissed without prejudice because it contained claims that had not been exhausted with the state courts. *Raymond v. Davis,* No. 05-72577, 2006 WL 903610 (E.D. Mich. Apr. 7, 2006).

Petitioner filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.500, *et. seq.,* which the trial court denied. *People v. Raymond,* 2001-179885 (Oakland County Circuit Court, July 31, 2006). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Raymond*, No. 279447 (Mich. Ct. App. Feb. 19, 2008), *lv. den.* 482 Mich. 973, 754 N.W.2d 899 (Mich. 2008).[1]

Petitioner filed the instant petition for writ of habeas corpus, seeking relief on the following grounds:

> I. The trial court violated the Petitioner's Fourth Amendment right to protection against unreasonable search and seizure by refusing to suppress the evidence which the police obtained prior to Petitioner's arrest, without a warrant, without probable cause to be where they were: in a motel room where Petitioner did not consent to the police entering the room and was illegally detained.
>
> A. In reviewing the trial court's decision to deny the Petitioner's motion to suppress the evidence, the Michigan Court of Appeals' decision was based on an unreasonable determination in light of the evidence relied on in the trial court's misapplication of established federal law as determined by the United States Supreme Court.

---

[1] Petitioner subsequently filed a second motion for relief from judgment, which was denied on the ground that Michigan Court Rule 6.502(G) bars the filing of successive motions for relief from judgment. Because Petitioner does not raise in this petition the claim that she raised in her second motion for relief from judgment, the Court will not cite these decisions.

3

B. The Petitioner was denied her Sixth Amendment right to the effective assistance of appellate counsel on her direct appeal when appellate counsel failed to cite to the ineffective assistance of trial counsel for his failure to properly pursue and present to the trial [court] Petitioner's co-defendant['s seizure] which was directly and causally connected to the illegal entry, detention, and search within the Petitioner's motel room.

II. Trial counsel's failure to investigate Petitioner's signature on the consent to search form, failure to object to lack of notice of the testimony of her co-defendant and failure to request a cautionary instruction regarding accomplice testimony constitutes ineffective assistance of counsel under the Sixth Amendment and requires a new trial where the errors were so substantial that they could have changed the outcome of the trial.

A. The Michigan Court of Appeals unreasonably applied the constitutional standard of review of ineffective assistance claims without having allowed the Petitioner an evidentiary hearing to expand the record on the level of unreasonableness in trial counsel's performance.

B. The Michigan Court of Appeals' decision on this claim further bolsters the Petitioner's first argument of having been denied the right to the effective assistance of appellate counsel; for failing to cite to the ineffective assistance of trial counsel for his failure to properly pursue and present to the trial court the facts surrounding the traffic stop of the Petitioner's co-defendant which was directly and causally connected to the evidence which was illegally obtained by the police.

III. Petitioner was denied her constitutional right to confrontation because the trial court impermissibly restricted the scope of cross-examination of Petitioner's alleged accomplice, concealing his bias.

A. The Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

## II. Discussion

### A. Standard of Review

Federal statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S. Ct. at 1521. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ----, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333

5

n.7, 117 S. Ct. 2059, 2067 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring in judgment)). "[R]eadiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24, 123 S. Ct. at 360. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

**B. Statute of Limitations**

Respondent argues that the petition should be dismissed as untimely because Petitioner failed to comply with the statute of limitations found in 28 U.S.C. § 2244(d)(1) or the tolling provisions of this Court's order dismissing the first habeas petition without prejudice. This Court's order required Petitioner to file her motion for relief from

judgment within sixty days and return to this Court within sixty days of exhausting her claims in state court. Petitioner contends that her petition was timely filed. She claims that she filed her motion for relief from judgment with the state court within sixty days of this Court's order. Petitioner further claims that she did not receive the Michigan Supreme Court's September 9, 2008 decision until almost ten months later on July 2, 2009 due to problems that she experienced with receiving her legal mail in the prison mail room.

Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999) (citing *Lambrix v. Singletary*, 520 U.S. 518, 524-25, 117 S. Ct. 1517, 1523 (1997)). Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court may, in the interest of judicial economy, proceed to the merits of a habeas petition. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 n.2 (6th Cir. 2006). Thus, the Court need not resolve the dispute over the timeliness of the petition. Assuming without deciding that the current petition was timely, the Court concludes for the reasons stated below that the petition fails on its merits.

## C. Petitioner's Fourth Amendment Claim

Petitioner first argues that the state court violated her Fourth Amendment rights by failing to suppress evidence that the police had seized from her motel room without a warrant and without her consent. A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate

7

an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95, 96 S. Ct. 3037, 3052-53 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). "The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided." *Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grounds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *Brown v. Berghuis,* 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986)). Thus, "[a]n argument directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Id.* at 812-13 (quoting *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994)). Petitioner unsuccessfully challenged the validity of the search in state court. Accordingly, *Stone* bars her Fourth Amendment claim.

**D. Ineffective Assistance of Counsel Claims**

Petitioner claims that she was denied the effective assistance of trial and appellate

8

counsel. To show that she was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two prong test. First, she must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065. In other words, Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Second, Petitioner must show that the deficient performance prejudiced her defense. *Id.* at 687, 104 S. Ct. at 2064. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005). Petitioner bears the burden of demonstrating a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *Wong v. Belmontes*, --- U.S. ----, 130 S. Ct. 383, 390-91 (2009).

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable - a substantially higher threshold.'" *Knowles v.*

*Mirzayance*, --- U.S. ----, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)). The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable, not whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 131 S. Ct. at 785. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664, 124 S. Ct. at 2149). Thus, a "doubly deferential judicial review" applies to *Strickland* claims brought by habeas petitioners. *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003)). This means that on habeas review of a state court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, --- U.S. ----, 130 S. Ct. 1473, 1485 (2010)). Because of this doubly deferential standard, the Supreme Court has indicated:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 788. Finally, the Court is aware that reliance on the "harsh light of hindsight" to cast doubt on a trial that took place nine years ago and a direct appeal that took place seven years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Id.* at 789.

Petitioner claims that trial counsel was ineffective for failing to seek the suppression

10

of the evidence on the ground that the police impermissibly exceeded the scope of co-defendant Nwankwo's traffic stop to justify speaking with Petitioner in order to obtain her consent. Petitioner further contends that appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness for failing to seek the suppression of the evidence on this basis. Where counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant seeking to demonstrate actual prejudice must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986).

 The police officers involved in this case have admitted that there was no probable cause to search Petitioner's motel room. The prosecutor instead argued that a warrantless search was permissible because Petitioner consented to it. Both trial and appellate counsel chose to challenge the legality of the search by arguing that under the circumstances of the case, Petitioner did not freely and voluntarily consent to the search of her motel room. In light of the fact that the police and prosecutor conceded that there was no probable cause for the search, trial and appellate counsel both reasonably chose to focus on challenging the validity of Petitioner's consent.

 In *Cowans v. Bagley*, 639 F.3d 241 (6th Cir. 2011), the Sixth Circuit addressed a habeas petitioner's claim that his trial counsel was ineffective for challenging the search of the petitioner's home on the basis that the parole officer lacked probable cause, rather than focusing on the validity of the consent given by the petitioner's wife to search the home. In rejecting the petitioner's claim, the court observed:

11

> [C]ounsel's failure to make an additional (or alternative) Fourth Amendment objection does not fall below an objective standard of reasonableness. Often an attorney will have several possible arguments available to her and will choose the one she thinks is the most likely to succeed or offers the greatest possible return for her client. Choosing the ground on which to contest a search is classically the kind of strategic decision that attorneys are hired to make.

*Id.* (citing *Strickland*, 466 U.S. at 690–91, 104 S. Ct. at 2066).

In the present case, in light of the fact that the police acknowledged that they lacked probable cause to search Petitioner's room, trial counsel and appellate counsel both made a reasonable strategic decision to focus on the validity of Petitioner's consent to the search. As the prosecutor never disputed that the police lacked probable cause for the search, neither trial nor appellate counsel was ineffective for failing to argue that the police exceeded the scope of their initial traffic stop of Nwankwo to justify speaking with Petitioner to obtain her consent.

Petitioner claims that her trial counsel was ineffective for failing to obtain a handwriting expert to challenge the authenticity of her signature on the consent form. The Michigan Court of Appeals rejected petitioner's claim:

> We reject defendant's claim that defense counsel was ineffective for failing to investigate the signature on the consent form. Following trial, defendant retained a handwriting expert to analyze and compare the signature on the consent form to defendant's signature on six other documents that she admitted signing. The handwriting expert's report concluded that the expert was "unable to offer a conclusive opinion concerning whether [defendant] signed" the consent form, but that the signature on the consent form shows indications that it was not written by the same person that signed the other signature samples.
>
> Defendant presented this report to the trial court during her motion for an evidentiary hearing. The expert's report indicates that he found some discrepancies in the signature samples that may indicate that defendant did not sign the consent form. As such, the expert's opinion was relatively equivocal. Even if defendant's expert's opinion had been offered at the suppression

12

>hearing, the trial court indicated that it would not have changed its decision to deny defendant's motion to suppress. A trier of fact is not bound to accept the opinion of an expert. Accordingly, defendant has failed to demonstrate that but for counsel's alleged inaction, there was a reasonable probability that the result of the proceeding would have been different.

*Raymond,* slip op. at 5 (internal footnotes omitted). The Court agrees with this conclusion. Because the handwriting expert's testimony would not have changed the trial court judge's decision to deny the motion to suppress, Petitioner cannot show that she was prejudiced by her trial counsel's failure to introduce this evidence at the suppression hearing.

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutor's addition of co-defendant Patrick Nwankwo as a prosecution witness in the middle of trial after Nwankwo indicated that he would testify on his own behalf. The Michigan Court of Appeals ruled that there was no indication that the trial court judge abused her discretion by permitting Nwankwo to testify, as Michigan Compiled Laws § 767.40a(4) provides that "[t]he prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." *Raymond,* slip op. at 6. The court concluded that Petitioner had "failed to demonstrate, or even argue, that an objection to the late addition of codefendant Nwankwo as a witness would have been successful." *Id.* Trial counsel is not ineffective for failing to raise a futile objection. *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996). Because Petitioner has not shown that an objection to the late addition of Nwankwo as a witness would have been successful, she has failed to show that counsel was ineffective for failing to raise the objection.

In a related claim, Petitioner argues that counsel was ineffective for failing to seek a

13

continuance of the trial after learning that the prosecutor would call Nwankwo as a witness. The Michigan Court of Appeals rejected this claim:

> There is nothing in the record that supports defendant's assertion that defense counsel was unprepared to cross-examine codefendant Nwankwo. To the contrary, the record shows that defense counsel was intimately familiar with the case, was not surprised by codefendant Nwankwo's testimony, and adequately cross-examined him. Defendant has further failed to indicate what questions defense counsel failed to ask or any other specific omissions defense counsel made during codefendant Nwankwo's testimony.

*Raymond,* slip op. at 6. The record demonstrates that Petitioner's trial counsel questioned Nwankwo extensively, highlighting inconsistencies in his testimony and his motivations for testifying falsely against Petitioner. Trial Tr. 214-39, Mar. 21, 2002.[2] There is no indication that additional time would have aided Petitioner's defense. The Court therefore concludes that Petitioner has not established that her trial counsel was ineffective for failure to seek a continuance. *See Johnson v. Bell*, 525 F.3d 466, 487-88 (6th Cir. 2008).

Petitioner contends that her trial counsel was ineffective for failure to request a cautionary jury instruction on accomplice testimony. Rejecting this claim, the Michigan Court of Appeals held:

> While defense counsel's failure to request the instruction is questionable, we are satisfied there is no reasonable probability that the result of the proceedings would have been different in the absence of the alleged error. Contrary to defendant's claims, this case was not "closely drawn." Apart from codefendant Nwankwo's testimony, there was ample evidence implicating defendant. In addition to defendant's post-arrest statement to the police that connected her to the heroin found in the motel room, there was independent evidence that codefendant Nwankwo was arrested for possession of heroin while driving a car registered in defendant's name. We further note that a large amount of

---

[2] This transcript is included among the materials filed in response to Plaintiff's initial habeas petition. *See* Case No. 05-cv-72577, Dkt. #18.

14

> heroin was found in defendant's motel room, and that a large sum of money was hidden in the lining of defendant's purse.
>
> Codefendant Nwankwo's questionable credibility was also made apparent to the jury and his motivation to lie was thoroughly explored by defense counsel. The record shows that defense counsel vigorously and extensively cross-examined both codefendant Nwankwo and the police about codefendant Nwankwo's involvement in the crimes, his motivations for testifying untruthfully, and the inconsistencies in his testimony. Defense counsel also discussed codefendant Nwankwo's motivation for falsely testifying and implicating defendant during closing argument.

*Raymond,* slip op. at 7.

In *Krist v. Foltz*, 804 F.2d 944, 947 (6th Cir. 1986), the Sixth Circuit held that a defense attorney's failure to request an accomplice instruction was "insignificant" where the witness's "unsavory past and his motive for naming the defendant as his companion in crime were fully developed by counsel on cross-examination." During cross-examination and closing arguments, Petitioner's counsel fully developed Nwankwo's involvement in the crime, the inconsistencies between Nwankwo's testimony and the other evidence, and Nwankwo's motives for testifying falsely and implicating Petitioner. Counsel's failure to request a specific instruction on accomplice testimony therefore did not rise to the level of ineffective assistance of counsel and would not entitle Petitioner to habeas relief.

Petitioner claims that her appellate counsel was ineffective for failing to argue on appeal that her consent had been vitiated because she had been illegally detained by the police. In support of her argument, Petitioner cites *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319 (1983). In *Royer*, the Supreme Court held that when a suspect is illegally detained, any subsequent consent to search is tainted by that illegal detention and cannot justify the search. *Id.* at 507-08, 103 S. Ct. at 1329. Although Petitioner acknowledges

15

that appellate counsel cited *Florida v. Royer* in her brief, Petitioner argues that by failing to include this case or otherwise challenge the trial court's alleged misapplication of *Royer* in the statement of questions in the appellate brief, appellate counsel waived review of this claim on appeal.

Michigan Court Rule 7.212(C)(5) requires a statement of the questions involved, with each issue for appeal separately numbered. Because Petitioner's claim that her illegal detention rendered her consent invalid was "effectively inseparable" from her claim that she did not freely and voluntarily consent to the police search, it is far from clear that Petitioner would have had to separately number it in her brief to meet the requirements of Michigan Court Rule 7.212(C)(5). *See Dando v. Yukins,* 461 F.3d 791, 797 (6th Cir. 2006). Moreover, there is no indication that the Michigan Court of Appeals refused to consider Petitioner's argument that the trial court erred in misapplying *Royer.* The Court of Appeals thoroughly reviewed and rejected Petitioner's claim that she did not consent to the search. *Raymond,* slip op. at 2-4. The Court of Appeals noted:

> Beyond defendant's assertions, which the court found implausible, there is no indication in the record that the police used coercive measures or attempted to place defendant in duress to obtain consent.

*Id.* at 4. As the appellate court considered Petitioner's argument, Petitioner cannot show that she was prejudiced by her counsel's failure to include it in the statement of questions in her appellate brief.

**E. Petitioner's Confrontation Clause Claim**

Petitioner argues that her Sixth Amendment right to confrontation was violated when the trial court judge refused to allow her to cross-examine Nwankwo regarding the

16

maximum penalty that he faced if convicted for possessing the heroin discovered in Petitioner's motel room. In rejecting this claim, the Michigan Court of Appeals noted that Nwankwo was never charged with possession of the heroin seized from Petitioner's motel room, nor did he claim that Petitioner planted the heroin in his car. The court concluded that this was "not a case involving simple blame shifting between two defendants charged with the same crime, nor is it a situation where a witness testifies after avoiding a particular penalty by entering into a plea agreement." *Raymond*, slip op. at 8-9. The Court of Appeals further noted that the trial court's ruling "did not amount to a blanket exclusion of all evidence challenging Nwankwo's credibility," as defense counsel cross-examined Nwankwo about his motivation for fabricating testimony. *Id.*

A criminal defendant has the right to confront the witnesses against him. U.S. Const. amend. VI. A primary interest secured by the Confrontation Clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 1076 (1965). The Confrontation Clause guarantees the accused the right to cross-examine adverse witnesses to uncover possible biases and expose the witness's motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308, 316-317, 94 S. Ct. 1105, 1110-11 (1974). Nonetheless, "[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish.'" *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 842 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S. Ct. 2658, 2664 (1987)). The Confrontation Clause does not prevent a trial judge from limiting defense counsel's inquiry into potential bias of a prosecution witness. "On the contrary, trial judges retain

17

wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986).

Although Petitioner's counsel was not permitted to question Nwankwo about the maximum penalty he faced if convicted for possession of heroin, counsel was permitted to question Nwankwo about the fact that he was facing criminal charges and wanted to return to Houston. Nwankwo also acknowledged on cross-examination that he would be convicted if he admitted that the heroin belonged to him. Trial Tr. 226-31, Mar. 21, 2002. The jury had enough information to understand Nwankwo's possible bias or motivation for testifying falsely against Petitioner. The additional information that Nwankwo faced a mandatory penalty of life in prison if he was charged with the heroin recovered from Petitioner's motel room would not have added to the jury's understanding of potential bias. Therefore, the judge's decision to preclude counsel from questioning Nwankwo about the maximum penalty he faced did not violate Petitioner's Sixth Amendment rights. *See Gonzales v. Wolfe,* 290 Fed. Appx. 799, 808-09 (6th Cir. 2008) (restriction on cross-examination of a witness regarding the potential length of his sentence and the legality of his sentence did not violate a defendant's Confrontation Clause rights, as that information would not have added to the jury's understanding of potential bias).

Moreover, in a habeas corpus proceeding, a trial error is harmless unless the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'"

18

*Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)).  A violation of the Confrontation Clause can be harmless error.  *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438.  In light of the fact that a large amount of heroin was discovered in Petitioner's motel room and she confessed to her involvement in heroin trafficking, any limitation on Petitioner's ability to cross-examine Nwankwo was harmless error at worst.  Petitioner is not entitled to habeas relief on her final claim.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Cases.  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327, 123 S. Ct. at 1034 (2003).  For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  The Court therefore declines to issue Petitioner a certificate of appealability.

### IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED WITH**

**PREJUDICE;**

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability.

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:
Ijoma Raymond, #406446
Huron Valley Women's Correctional Facility
3201 Bemis Road
Ypsilanti, MI 48197-0911
Raina I. Korbakis, A.A.G.